**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ISRAEL ABDELAZIZ,

        Petitioner,

    v.

E. VALENZUELA,

        Respondent.

Case No. 1:12-cv-00887-SKO-HC

ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (DOCS. 1, 4) AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT

ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on June 11, 2012, and on behalf of Respondent on July 25, 2012. Pending before the Court is the petition, which was filed on October 24, 2011, along with a separate supporting memorandum.  Respondent filed an answer on August 17, 2012, and Petitioner filed a traverse

1

on October 9, 2012.

I.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Fresno (FCSC), located within the jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d). Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.

The Court concludes it has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent E. Valenzuela, who had custody of Petitioner at Petitioner's institution of confinement. (Doc. 18.) Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

1    Accordingly, the Court concludes that it has jurisdiction over
2 the person of the Respondent.

3    II.   <u>Background</u>

4    Petitioner was convicted in the FCSC of having committed grand
5 theft in violation of Cal. Pen. Code § 487(a) on December 28, 2007
6 (count 1); identity theft in violation of Cal. Pen. Code § 530.5
7 from December 28, 2007, through January 7, 2008 (count 2); and petty
8 theft, a lesser included offense of second degree robbery, in
9 violation of Cal. Pen. Code § 488 on February 9, 2008 (count 3).
10 The judgment was affirmed on direct appeal by the Court of Appeal of
11 the State of California, Fifth Appellate District (CCA) (LD 4).[1]  The
12 California Supreme Court (CSC) summarily denied review.  (LD 6.)

13    In a habeas proceeding brought by a person in custody pursuant
14 to a judgment of a state court, a determination of a factual issue
15 made by a state court shall be presumed to be correct; the
16 petitioner has the burden of producing clear and convincing evidence
17 to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1);
18 <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This
19 presumption applies to a statement of facts drawn from a state
20 appellate court's decision.  <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1
21 (9th Cir. 2009).  The following statement of facts is taken from
22 the opinion of the CCA in <u>People v. Israel Abdelaziz</u>, case number
23 F057903, filed on November 9, 2010.

24    The December 28, 2007 Incident

25    On December 28, 2007, Josh Brockett, a plainclothes loss
26    prevention officer at Gottschalk's in Clovis, was on duty
       in the store's camera room when one of the managers
27

28 [1] The case was remanded on the sole issue of entitlement to presentence custody
credits, but the judgment was otherwise affirmed.  (LD 4.)

reported someone who might be a chronic offender was
trying to return items, namely cookware and a comforter,
without a receipt. Brockett went to one of the store
exits, where he saw Abdelaziz leaving the store carrying
cookware and a comforter valued at more than $400.
Brockett watched as Abdelaziz got into his car. He did not
arrest Abdelaziz at that time because he did not know if
Abdelaziz had the items with him when he entered the
store.

Brockett returned to the camera room to see if he could
pick up Abdelaziz on the outside cameras, but Abdelaziz
was out of range. Less than a minute later, Brockett, who
was still observing from the camera room, saw Abdelaziz
re-enter the store through the same doors and walk over to
the men's department, where he selected a suit jacket and
matching pants. He took the items to the men's wrap desk,
where a cash register is located. Brockett called the
sales clerk there, who told him Abdelaziz was trying to
return the garments. Brockett did not see Abdelaziz give
the clerk any money.

After about a 20 second conversation at the men's wrap
desk, Abdelaziz walked to the children's wrap desk about
40 yards away and spoke with the sales clerk there.
Abdelaziz then went to one of the exit doors still holding
the pants and jacket, and stood near the exit for 45
seconds to a minute. Brockett called mall security, left
the camera room, and went to the exit where Abdelaziz was
standing. Brockett walked by Abdelaziz and went out of the
store. A uniformed mall security officer had arrived, but
was standing out of view. A few seconds later, Abdelaziz
walked out of the store. Brockett approached him,
identified himself, and asked Abdelaziz to come back into
the store. Abdelaziz cooperated at first, but then ran,
dropping the garments. He got about three feet before
Brockett tackled him, taking him to the ground. Brockett
handcuffed him with the assistance of the mall security
guard.

Brockett took Abdelaziz to the store security area and
called the Clovis police. While waiting for police to
arrive, Brockett asked Abdelaziz his name. Abdelaziz told
him his name was Mark Nelson and his date of birth was
October 31, 1964. Abdelaziz also identified himself to the
Clovis police officer who arrived as Mark Nelson with a
date of birth of October 31, 1964. The cookware and

4

comforter Brockett had seen Abdelaziz leave the store with
were retrieved from Abdelaziz's truck. The total value of
the cookware, comforter, jacket and pants was $920.

Brockett later reviewed video of Abdelaziz entering the
store the first time that day, which showed that he did
not have the cookware or comforter with him. The video
showed him in the departments where those items were
located, but did not show him selecting the items. The
video also showed Abdelaziz at the china wrap desk,
attempting to return the cookware and comforter through a
merchandise only return, which is used when the customer
does not have a receipt. In such a return, the customer is
given a card that can be spent only in the store. Based on
his review of the video, Brockett believed Abdelaziz had
not paid for the cookware and comforter, and did not enter
the store with those items.

Clovis police arrested Abdelaziz and took him to the
police department, where he signed all paperwork as "Mark
Nelson," including a booking form, inmate clarification
questionnaire, and property envelope. The signature on the
paperwork did not match the signature of the real Mark
Nelson. Charges were filed against "Mark Nelson." On
January 7, 2008, Abdelaziz pled no contest to a
misdemeanor theft charge under the name of Mark Nelson.

Mark Anthony Nelson testified at the preliminary hearing
that his date of birth is October 31, 1964.FN2 He was at
home on December 28, 2007 and did not go to Gottschalk's
that day. He found out about the shoplifting charge when
the district attorney told him the deal was off in another
case he was involved in that was going to be dismissed
because he had not obeyed all laws. He ultimately obtained
a factual finding of innocence with respect to the
shoplifting charge. Nelson and Abdelaziz are cousins;
Nelson has known Abdelaziz his whole life. According to
Nelson, Abdelaziz knew Nelson's birth date because they
acknowledged each other's birthdays every year when they
were growing up and Nelson's birthday is on Halloween.
Abdelaziz did not have Nelson's permission to use his name
and birth date on December 28, 2007.

> FN2. Nelson's preliminary hearing testimony was
> introduced into evidence and read to the jury
> after the parties stipulated to his
> unavailability.

The February 9, 2008 Incident

On February 9, 2008, Matthew Silver, Brittany Stapp and Gina Cox were working as loss prevention agents at the Gottschalk's Fashion Fair store in Fresno. At around four p.m., all three were in the store's video room, where a photograph of Abdelaziz was posted with the name "Mark Nelson" under it, when Silver received a call from a sales clerk about a suspicious return. They then noticed Abdelaziz going down the escalator to the first floor; he was not carrying anything in his hands. Abdelaziz went into the women's department, took some garments and presented them for return. He received a credit receipt for the garments in the amount of $99.20 and a card known as a merchandise only card, which permitted him to buy merchandise of that value. He had both the card and receipt in his pocket. At this point, the transaction was complete.

Silver and Cox contacted Abdelaziz, while Stapp stayed in the video room operating the camera. As Silver and Cox approached Abdelaziz, they told him they were making a citizen's arrest. Abdelaziz ran, but was detained by Silver, Cox and other security personnel. As Silver tried to trip up Abdelaziz, Abdelaziz spun around toward Cox, his left hand came toward her face, and she was struck in the lower jaw, causing a red mark. Stapp left the video room to assist Silver and Cox; when she arrived, Abdelaziz was on the floor kicking and screaming. Abdelaziz was eventually handcuffed and taken to the security office; on the way there, he identified himself as Mark Nelson. A search of Abdelaziz revealed two receipts and one merchandise only card that had a total credit value of $243 or $244. The receipts had Abdelaziz's true name on them. Abdelaziz's identification card was also found, which stated his true name.

People v. Abdelaziz, no. F057903, 2010 WL 4461685, at *1-*3 (Nov. 9, 2010).

III.  Sufficiency of the Evidence

Petitioner alleges that the evidence was insufficient to support his conviction of identity theft in violation of Cal. Pen. Code § 530.5 because it did not establish beyond a reasonable doubt

6

that Petitioner used the information for an unlawful purpose or obtained the identity of Mark Nelson for the purpose of committing theft; rather, Petitioner used the identification on the spur of the moment when confronted by authorities.  (Doc. 1, 5; doc. 4, 2-3, 10-12.)

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or

7

concludes differently on a materially indistinguishable set of

facts.  Williams v. Taylor, 529 U.S. at 405-06.  A state court

unreasonably applies clearly established federal law if it either 1)

correctly identifies the governing rule but applies it to a new set

of facts in an objectively unreasonable manner, or 2) extends or

fails to extend a clearly established legal principle to a new

context in an objectively unreasonable manner.  Hernandez v. Small,

282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529

U.S. at 407.  An application of clearly established federal law is

unreasonable only if it is objectively unreasonable; an incorrect or

inaccurate application is not necessarily unreasonable.  Williams,

529 U.S. at 410.  A state court's determination that a claim lacks

merit precludes federal habeas relief as long as fairminded jurists

could disagree on the correctness of the state court's decision.

Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even

a strong case for relief does not render the state court's

conclusions unreasonable.  Id.  To obtain federal habeas relief, a

state prisoner must show that the state court's ruling on a claim

was "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility

for fairminded disagreement."  Id. at 786-87.

     The standards set by § 2254(d) are "highly deferential

standard[s] for evaluating state-court rulings" which require that

state court decisions be given the benefit of the doubt, and the

8

Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.  Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim raised by a petitioner, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423

F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Pursuant to § 2254(d)(2), a habeas petition may be granted only if the state court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir. 2004). For relief to be granted, a federal habeas court must find that the trial court's factual determination was such that a reasonable fact finder could not have made the finding; that reasonable minds might disagree with the determination or have a basis to question the finding is not sufficient. <u>Rice v. Collins</u>, 546 U.S. 333, 340-42 (2006).

Here, the reasoned decision of the CCA was the last reasoned decision on Petitioner's claims. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991). It will be presumed that the CSC's summary denial of Petitioner's petition for review (LD 6) rested upon the same grounds set forth in the CCA's decision.

      B.  <u>The State Court's Decision</u>

The pertinent portion of the CCA's decision is as follows:

I. Sufficiency of the Evidence on Count 2

Abdelaziz contends there is insufficient evidence to support his conviction in count 2 for identity theft because the evidence failed to establish he willfully obtained the identifying information of another person. Specifically, Abdelaziz asserts that because he learned Mark Nelson's name and address as "part of the family history with which he grew up," he did not intentionally obtain that information and therefore could not be

10

convicted of identity theft.

> "Our duty on a challenge to the sufficiency of
> the evidence is to review the whole record in
> the light most favorable to the judgment for
> substantial evidence—credible and reasonable
> evidence of solid value—that could have enabled
> any rational trier of fact to have found the
> defendant guilty beyond a reasonable doubt.
> (*Jackson v. Virginia* (1979) 443 U.S. 307, 318;
> *People v. Prince* (2007) 40 Cal.4th 1179, 1251.)
> In doing so, we presume in support of the
> judgment the existence of every fact a
> reasonable trier of fact could reasonably deduce
> from the evidence. (*Prince, supra*, 40 Cal.4th at
> p. 1251.) The same standard of review applies to
> circumstantial evidence and direct evidence
> alike." (*People v. Gutierrez* (2009) 174
> Cal.App.4th 515, 519.)

The trial court instructed the jury on section 530.5,
subdivision (a), FN3 in the language of CALCRIM No.2040,
in pertinent part, as follows: "The defendant is charged
in Count 2 with the unauthorized use of someone else's
personal identifying information, in violation of Penal
Code section 530.5(a). To prove that the defendant is
guilty of this crime, the People have to prove that: [¶]
One, the defendant willfully obtained someone else's
personal identifying information; [¶] Two, the defendant
willfully used that information for an unlawful purpose;
[¶] And three, the defendant used the information without
the consent [of] the person[ ] [whose] identifying
information he was using. [¶] Personal identifying
information includes a person's name and date of birth....
[¶] Someone commits an act willfully when he or she does
it willingly or on purpose. [¶] An unlawful purpose
includes unlawfully obtaining credit or goods, or evading
the process of the court in the name of the other person."

> FN3. Section 530.5, subdivision (a), provides in
> pertinent part: "Every person who willfully
> obtains personal identifying information, as
> defined in subdivision (b) of Section 530.55, of
> another person, and uses that information for
> any unlawful purpose, including to obtain, or
> attempt to obtain, credit, goods, services, real
> property, or medical information without the

11

consent of that person, is guilty of a public offense, ..."

Thus, in order to convict Abdelaziz of identity theft, the jury was required to find that (1) Abdelaziz willfully obtained the personal identifying information of Mark Nelson; and (2) he used that information for an unlawful purpose without Mark Nelson's consent. (See *People v. Tillotson* (2007) 157 Cal.App.4th 517, 533.) Abdelaziz challenges only the first element, arguing there is insufficient evidence he "willfully obtained" Nelson's personal identifying information. Citing *People v. Lewis* (2004) 120 Cal.App.4th 837, 852,FN4 Abdelaziz asserts the word "willfully" means "intentionally," and reasons that because he learned Nelson's name and birth date while he and Nelson were growing up, he did not intend to obtain the information but instead obtained the information inadvertently.

> FN4. The court in *People v. Lewis* explains that "[t]he word "willfully" as generally used in the law is a synonym for 'intentionally,' i.e., the defendant intended to do the act proscribed by the penal statute." (*People v. Lewis, supra*, 120 Cal.App.4th at p. 852.)

Abdelaziz's argument is based on the assumption that someone who learns a relative's name and birth date while growing up does not intentionally obtain that information. While it might not be possible to pinpoint an exact point in time when that individual learned such information, it is certainly reasonable to infer that at some point he or she was told the relative's name and birth date, which he or she then intentionally memorized. That obtaining the name and birth date did not require any particular effort on the individual's part other than remembering what was said does not mean the individual did not obtain the information intentionally. As the People point out, to conclude otherwise would exclude from the statute's reach personal information that one acquires through years of knowing someone. Even if Abdelaziz learned Nelson's name and birth date while growing up, he was not forced to do so. The jury reasonably could conclude that by remembering and using that information, Abdelaziz had obtained the information intentionally. Before we can reverse the judgment for insufficiency of the evidence, "it must clearly appear that upon no hypothesis whatever is there

12

sufficient substantial evidence to support it." (<u>People v. Redmond</u> (1969) 71 Cal.2d 745, 755.) That is not the state of the record here. Abdelaziz's insufficiency of the evidence argument simply asks us to reweigh the facts. (*People v. Bolin* (1998) 18 Cal.4th 297, 331–333.) That we cannot do.

<u>People v. Abdelaziz</u>, no. F057903, 2010 WL 4461685, at *3-*4.

### C.   <u>Analysis</u>

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 20-21 (1979); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1101 (9th Cir. 1998); <u>Jones v. Wood</u>, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution.  <u>Jackson</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts.  It must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  <u>Jackson v. Virginia</u>, 443 U.S. at 319; <u>Jones</u>, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a

conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101.  However, the minimum amount of evidence Due Process Clause requires to prove an offense is purely a matter of federal law.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standard to the facts of the case.  Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to

14

considerable deference under 28 U.S.C. § 2254(d).  <u>Coleman v.</u>
<u>Johnson</u>, 132 S.Ct. at 2065.

Here, the state court applied the <u>Jackson</u> standard in light of
the substantive requirements of state law.  A fairminded jurist
could conclude that the state court reasonably applied the <u>Jackson</u>
standard in determining that Petitioner's acquisition of the name
and birthdate was intentional in view of his retention and use of
the information.  The state court correctly presumed that the trier
of fact resolved factual disputes and drew inferences in support of
the judgment.  To the extent Petitioner argues that correctional
officers knew Petitioner's true identity, Petitioner fails to show
how such a circumstance renders the evidence insubstantial.

Accordingly, the Court will deny Petitioner's claim concerning
the sufficiency of the evidence.

IV.   Denial of Motion for New Trial and Request for
      Information relating to Juror Misconduct

Petitioner alleges that the trial court abused its discretion
and violated Petitioner's right to a fair trial under the Sixth and
Fourteenth Amendments when, without granting an evidentiary hearing,
it denied Petitioner's motion for a new trial based on the post-
verdict receipt of a juror's note to the effect that other jurors
were not permitting her to express her views or to review evidence
during deliberations with respect to counts 1 (grand theft charged
and found) and 3 (robbery charged, jury found lesser included
offense of petty theft).  Petitioner alleges he was entitled to a
new trial based on juror misconduct, which was erroneously
determined to have been harmless by a state court that used the
wrong standard of prejudice.  Petitioner also alleges that the trial

15

court abused its discretion in determining that the juror's note was

inadmissible hearsay evidence under the California Evidence Code or

inadmissible under state law to impeach the verdict.  (Doc. 1, 5;

doc. 4, 13-22.)

In a related claim, Petitioner alleges the trial court

infringed on his right to a fair trial by an impartial jury in

denying his request for juror contact information so counsel could

investigate the potential juror misconduct  Petitioner argues that

good cause had been shown for further investigation.  (Doc. 1, 5;

doc. 4, 23.)

A.   The State Court's Decision

The pertinent portion of the state court's decision is as

follows:

III. Denial of Hearing on Juror Misconduct and Request for
     Juror Information

Abdelaziz contends the trial court abused its discretion
when it failed to conduct an evidentiary hearing on his
new trial motion claim of juror misconduct. He also
contends the trial court erred when it denied his
alternative motion for juror information.

A. Background

A little over an hour after the jury began deliberating on
Friday, May 15, 2009, the jury sent the trial court a note
requesting the testimony of Brockett and the officer who
responded to the December 28, 2007 incident, a video and
specific parts of Cox's and Silver's testimonies. The
jurors were called into court, where they each viewed the
requested video. The court then asked the jurors to return
to the jury room and discuss whether they wanted to hear
all, or only part, of the testimony of Brockett and the
officer, and then resubmit a request to the court
specifying the testimony they wanted to hear. The court
explained it could not comply with the request right away
because the court reporter was at a medical appointment,
but the reporter was expected back shortly and would be

16

advised of the request once she returned. The jury then retired to continue deliberations.

By the time the court reporter returned about a half hour later, the court had not received any further request for readback of testimony. The court then sent a note to the jury room asking the jury to specify the testimony it wanted read back, and advising that the reporter was present and would provide whatever was requested. A short time later, the jury sent the court a request for the read back of specific portions of the testimony of Cox and Silver, and also asked whether the first count could be "changed from grand to petty." In response, the court sent back a note referring the jury to the grand theft instruction previously given on count 1. The court reporter gave the requested readback in the jury room. Within minutes after the readback was finished, the jury advised the court it had reached a verdict.

After the verdicts were read, the court asked the foreperson, Juror Number 9, if the verdict was unanimous. Juror Number 9 responded: "It is." The court then asked the other jurors if that was correct, and they answered "yes." Both the prosecutor and defense counsel declined to have the jury polled and waived polling as to all counts. The court then ordered the clerk to record the verdicts. Before discharging the jury, the court told the jurors they were free to discuss the case with anyone, including the attorneys, and ordered the record of personal juror identifying information sealed. No juror remained to discuss the case.

Sometime after the jury was discharged, Juror Number 10 gave a handwritten note to the court bailiff, which was given to the court. The court turned the note over to counsel the following Tuesday, May 19. The note read: "While trying to determine my opinion on Count # 1 grand theft [and] the robbery the (Juror # 11) & (Juror # 2) refused (lashing out) to let me give an opinion. She said that I was upset with her and anyone who didn't hear me. The cowboy told me that I didn't like [redacted] and that I felt that she was a lier [sic]. And began to go back and forth with me about not liking her. I told her that I was not here to make friends. That there's a man's life in the balance and that I'm here to here [sic] the facts and that I have the right to request (Josh Brocketts) test[imony] and anyone else['s] test[imony]

because I have the right to no [sic] the facts. Every[
]time [sic] (she) read the laws or any fact she read it at
me. I felt very intimidated to give my opinion on count #
1 grand theft & count # 3 robbery."

Abdelaziz filed a motion for a new trial on counts 1 and 2
only, based on juror misconduct or, in the alternative,
for juror information. Abdelaziz argued Juror Number 10's
note showed the juror was intimidated into rendering a
verdict on count 1, and the court had a duty of inquiry to
see if the guilty verdicts were the result of improper
actions of other jurors. Abdelaziz also contended the
court was required to grant the motion to unseal juror
information records so the factual issues in the note
could be explored. In an attached declaration, defense
counsel stated any confidential juror information provided
to his office would be provided only to counsel and staff,
not Abdelaziz, and any inquires would be made only for the
purpose of developing the motion for a new trial.

The prosecutor filed written opposition to the motion,
arguing there was no admissible evidence to support the
new trial motion because the juror's note was hearsay and
merely statements regarding the jurors' mental processes,
and even if admissible, the note showed minor misconduct
at best that did not warrant overturning the jury's
verdict. The prosecutor further argued additional inquiry
based solely on the note would lead to a fishing
expedition.

The motion was heard on June 15, 2009. Following oral
argument, the court first addressed the new trial motion.
The court noted it had considerable discretion in
determining whether to conduct any investigation, citing
*People v. Prieto* (2003) 30 Cal.4th 226, 274, and stated
the [note] appeared to be no more than a juror's
displeasure regarding the tenor of the discussion in
deliberations and did not rise to the level of further
inquiry. Employing the three-step process of *People v.
Hord* (1993) 15 Cal.App.4th 711, 724, in deciding whether
to grant a new trial based on juror misconduct, the court
found that (1) the note was inadmissible hearsay and did
not suffice to grant a new trial, (2) even if admissible,
it did not show misconduct, as it reflected the give and
take of heated discussions that often take place during
deliberations, and the court was confident the verdicts
returned were in accordance with the court's instructions

for the jurors to be courteous to each other and to reflect the individual opinion of each juror, and (3) even if misconduct occurred, it was not remotely prejudicial as the evidence was sufficient and Abdelaziz derived a "very favorable verdict" on count 3, which would not have occurred if there was intimidation.

With respect to the alternative motion to disclose personal juror information, the court denied the motion after concluding a prima facie showing of good cause for release of the information had not been made. The court found the comments in the note merely reflected the juror's subjective decision-making process and therefore fell squarely within the provision of Evidence Code section 1150, subdivision (a), which excludes from consideration when inquiring into the validity of a verdict the mental processes by which the verdict is determined.

B. Failure to Hold Evidentiary Hearing

While Abdelaziz concedes Juror Number 10's note was insufficient by itself to warrant the granting of a new trial, he contends the trial court was required to conduct an evidentiary hearing on his new trial motion because the allegations made in Juror Number 10's note, when considered in light of the circumstances, established a prima facie case of juror misconduct. Abdelaziz asserts "[t]he circumstances suggest several possible areas of misconduct [,]" including (1) other jurors refused to deliberate with Juror Number 10 because they disagreed with her, (2) other jurors refused to allow Juror Number 10 to listen to Brockett's testimony even though she thought it was important to her decision in the case, or (3) other jurors coerced her into changing her vote to guilty.

Our Supreme Court recently explained the standards applicable to a claim that the trial court was required to conduct an evidentiary hearing on a claim of juror misconduct: "The trial court has discretion to determine whether to conduct an evidentiary hearing to resolve factual disputes raised by a claim of juror misconduct. (*People v. Avila* (2006) 38 Cal.4th 491, 604.) 'Defendant is not, however, entitled to an evidentiary hearing as a matter of right. Such a hearing should be held only when the court concludes an evidentiary hearing is "necessary

to resolve material, disputed issues of fact." [Citation.]
"The hearing ... should be held only when the defense has
come forward with evidence demonstrating a strong
possibility that prejudicial misconduct has occurred. Even
upon such a showing, an evidentiary hearing will generally
be unnecessary unless the parties' evidence presents a
material conflict that can only be resolved at such a
hearing." [Citation.]' (*People v. Avila, supra*, 38 Cal.4th
at p. 604.) The trial court's decision whether to conduct
an evidentiary hearing on the issue of juror misconduct
will be reversed only if the defendant can demonstrate an
abuse of discretion." (*People v. Dykes* (2009) 46 Cal.4th
731, 809-810 (*Dykes*).)

The only evidence before the court was Juror Number 10's
unsworn note. Assuming the note is even admissible
evidence,FN5 the trial court acted within its discretion
in declining to conduct an evidentiary hearing because the
note failed to demonstrate a strong possibility that
prejudicial misconduct occurred. While it appears that
deliberations in this case were not particularly
harmonious, jurors may disagree during deliberations and
express themselves vigorously, and even harshly, without
committing misconduct: " '[J]urors can be expected to
disagree, even vehemently, and to attempt to persuade
disagreeing fellow jurors by strenuous and sometimes
heated means.' [Citation.] During deliberations,
expressions of 'frustration, temper, and strong
conviction' may be anticipated but, in the interest of
free expression in the jury room, such expressions
normally should not draw the court into intrusive
inquiries." (*People v. Engelman* (2002) 28 Cal.4th 436,
446.)

> FN5. "[A] trial court does not abuse its
> discretion in denying a motion for new trial
> based upon juror misconduct when the evidence in
> support constitutes unsworn hearsay." (*Dykes,
> supra*, 46 Cal .4th at p. 810; see also *People v.
> Cox* (1991) 53 Cal.3d 618, 697, disapproved on
> other grounds in *People v. Doolin* (2009) 45
> Cal.4th 390, 421, fn. 22 (*Cox*) [unsworn
> statement of a juror and an affidavit by an
> investigator recounting the juror's statement to
> him not competent evidence to support new trial
> motion].)

Here, when considered as a whole, the note reflected only personality clashes between the jurors. Although Juror Number 10 initially stated that two jurors refused to let her [give] her opinion, she proceeds to recount the ensuing conversation regarding whether she liked another juror, states that she told the other jurors she had the right to request testimony, and concludes the note with the statement that she "felt very intimidated" to give her opinion on counts 1 and 3. Significantly, she does not state that she ultimately was unable to give her opinion, that the jurors overruled any request she had for a read back of testimony or that her treatment caused her to change her vote on those counts. Evidence that other panelists treated Juror Number 10 badly does not suffice to establish prejudicial misconduct. (*People v. Keenan* (1988) 46 Cal.3d 478, 541; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1087; *People v. Orchard* (1971) 17 Cal.App.3d 568, 572–574.)

Abdelaziz acknowledges it takes more than heated debate to establish misconduct, but asserts further investigation was required because it reasonably can be inferred from the circumstances that (1) Juror Number 10 was coerced to change her vote, (2) other jurors refused to deliberate with her, or (3) she wanted Brockett's testimony read back. These assertions, however, are pure speculation and fail to establish a strong presumption that prejudicial misconduct occurred. As our Supreme Court has cautioned, an evidentiary hearing into juror misconduct "should not be used as a 'fishing expedition' to search for possible misconduct." (*People v. Hedgecock* (1990) 51 Cal.3d 395, 419.) Here, since there was no evidence that Juror Number 10 was deprived of the right to hear testimony or coerced into changing her vote, the defense request for a hearing in this case was precisely the type of fishing expedition against which our Supreme Court cautioned. Accordingly, the trial court did not abuse its discretion in refusing to hold an evidentiary hearing.

C. Release of Juror Information

Abdelaziz next contends the trial court erred when it denied his alternative request for juror contact information. Once the jury's verdict is recorded in a criminal proceeding, the court's record of personal identifying information of trial jurors must be sealed until ordered otherwise. (Code Civ. Proc., § 237, subd.

21

(a).) After that, the defense may "petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose. This information consists of jurors' names, addresses, and telephone numbers. The court shall consider all requests for personal juror identifying information pursuant to Section 237." (Code Civ. Proc., § 206, subd. (g).)

Code of Civil Procedure section 237, subdivision (b) provides in pertinent part that "[t]he petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure." (Italics added.)

The burden of establishing good cause lies with the defense. (*People v. Granish* (1996) 41 Cal.App.4th 1117, 1131 (*Granish*).) The statute's language "indicate[s] a legislative intent to require the defendant show good cause of disclosure and not engage in merely a fishing ex[ped]ition." (*People v. Wilson* (1996) 43 Cal.App.4th 839, 852 (*Wilson*).)

The parties disagree on the applicable standard of review. Abdelaziz asserts the trial court's good cause determination is a mixed question of fact, i.e. the juror's conduct, and law, i.e. the good cause standard, which is subject to the reviewing court's *de novo* review, citing *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383, and *People v. Louis* (1986) 42 Cal.3d 969, 984, neither of which involved the issue of the standard of review on a motion for disclosure of juror identifying information. In contrast, the Attorney General contends the appropriate standard of review is abuse of discretion, citing *People v. Jones* (1998) 17 Cal.4th 279, 317 (*Jones*), in which our Supreme Court stated it believed the abuse of discretion standard of review should apply to such motions. We need not decide which is the appropriate standard because even if the trial court's decision is subject to *de novo* review, it did not err.

22

The substantive test for determining whether good cause
has been established was set forth in *People v. Rhodes*
(1989) 212 Cal.App .3d 541, 549 (*Rhodes*). Although that
case was decided prior to the present enactment requiring
a showing of good cause (*Jones, supra*, 17 Cal.4th at p.
317; *Townsel v. Superior Court* (1999) 20 Cal.4th 1084,
1095 (*Townsel*)), the *Rhodes* test has been soundly held to
apply to the current statutory requirement. (*People v.
Duran* (1996) 50 Cal.App.4th 103, 115-123; *Wilson, supra*,
43 Cal.App.4th at pp. 949-852; *Granish, supra*, 41
Cal.App.4th at pp. 1126-1129; *People v. Jefflo* (1998) 63
Cal.App .4th 1314, 1321, fn. 8 (*Jefflo*).) FN6

      FN6. We reject Abdelaziz's assertion that he was
      required to show only that a trial juror is
      willing to speak with defense counsel to
      establish good cause. In support of his
      position, he points to the general language in
      *Townsel* that once "a juror consents to an
      interview, no more need be shown, as [Code of
      Civil Procedure] section 206, subdivision (a)
      provides that jurors enjoy 'an absolute right to
      discuss ... the deliberation or verdict with
      anyone.' If a juror does consent to an
      interview, respondent court would abuse its
      discretion by requiring counsel to make a
      showing of need or 'good cause' greater than the
      desire to interview the juror for a lawful
      purpose." (*Townsel, supra*, 20 Cal.4th at p.
      1097.) *Townsel*, however, goes on to state that,
      "for verdicts returned after January 1, 1996,
      the requirements of [Code of Civil Procedure]
      section 237 [requiring good cause] would apply."
      (*Townsel, supra*, at p. 1098, fn.7.)

In *Rhodes, supra*, 212 Cal.App.3d 541, the court discussed
the competing interests of "maintaining the integrity of
our jury system, including encouraging public
participation in the process, fostering free and open
discussion among jurors, promoting verdict finality,
reducing incentives for jury tampering, and discouraging
harassment of jurors by losing parties eager to have the
verdict set aside." (*Id*. at p. 551.) Striking a middle
ground to harmonize and satisfy these interests, the court
held that "upon timely motion, counsel for a convicted
defendant is entitled to the list of jurors who served in

the case, including addresses and telephone numbers, if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." (*Id.* at pp. 551-552, italics added.)

The misconduct must be "of such a character as is likely to have influenced the verdict improperly." (Evid.Code, § 1150, subd. (a); see *Jefflo, supra*, 63 Cal.App.4th at p. 1322.) A defendant has not met his burden if the allegations of misconduct are vague, conclusory, speculative, or unsupported. (*Wilson, supra*, 43 Cal.App.4th at p. 852.)

Applying these authorities, we find no error. Juror Number 10's allegations that other jurors spoke to her in a rude and aggressive manner are inadequate as a matter of law to show jury misconduct because they are not of such character as are likely to have improperly influenced her verdict. (Evid.Code, § 1150; *Jefflo, supra*, 63 Cal.App.4th at p. 1322.) Significantly, the note does not state that Juror Number 10 was pressured into changing her vote, other jurors overruled her request for read back of testimony, or she was unable to express her opinion. Abdelaziz's assertion that Juror Number 10 "was intimidated into surrendering her honestly-held belief that [he] was not guilty of grand theft as charged in count one," is based on pure speculation and is therefore inadequate to show good cause (*Wilson, supra*, 43 Cal.App.4th at p. 852), as is his suggestion that if Juror Number 10 had been given an opportunity to discuss what happened in the jury room with defense counsel, she "would have been able to identify additional objectively ascertainable overt acts of misconduct."

Lastly, Abdelaziz contends denial of his motion for juror contact information infringed on his right to a fair trial by an impartial jury because the court was required to conduct an investigation sufficient to satisfy itself that he received a fair trial, citing *Smith v. Phillips* (1982) 455 U.S. 209, 215 (*Smith*), *Remmer v. United States* (1954) 347 U.S. 227, 229-230 (*Remmer*), and *People v. Tuggles* (2009) 179 Cal.App.4th 339, 382-384 (*Tuggles*).

24

> As the court explained in *Tuggles*, while the decisions in
> *Smith* and *Remmer* affirm the right of criminal defendants
> to a jury trial free from juror misconduct, "[w]e are
> unaware of any case from the United States Supreme Court
> or the appellate courts of the State of California holding
> that any provision of the federal Constitution requires
> the disclosure of the personal contact information of a
> juror to the parties, their counsel, their
> representatives, or members of the general public—even
> upon a showing of a strong possibility of juror
> misconduct." (*Tuggles, supra*, 179 Cal.App.4th at pp. 383,
> 385.) Nevertheless, trial courts have inherent power,
> apart from Code of Civil Procedure sections 206 and 237,
> to manage inquiries into juror misconduct, and where the
> court "is presented with a credible prima facie showing
> that serious misconduct has occurred, the trial court may
> order jurors to appear at a hearing and to answer
> questions about whether misconduct occurred." (*Tuggles,
> supra*, 179 Cal.App.4th at pp. 385–386.) Thus, while Code
> of Civil Procedure sections 206 and 237 allow jurors to
> prevent the release of identifying information to the
> parties and their attorneys, they "do not infringe upon
> the trial court's inherent power to investigate strong
> indicia of juror misconduct," including issuance of
> subpoenas compelling reluctant jurors to testify.
> (*Tuggles, supra*, 179 Cal.App.4th at pp. 386–387; *Cox,
> supra*, 53 Cal.3d at p. 700.)
>
> Abdelaziz claims the trial court failed to fulfill its
> responsibility to investigate juror misconduct. The trial
> court, however, was not presented with a strong indicia
> (sic) of juror misconduct and Abdelaziz failed to make a
> sufficient showing for release of jurors' personal
> identifying information. Accordingly, the trial court did
> not err in not investigating the claimed misconduct
> further or in denying his request for personal identifying
> information.

People v. Abdelaziz, 2010 WL 4461685, at *6-*12.

B.   State Law Claims

To the extent Petitioner contends that the state court failed

properly to interpret or apply state law concerning jury misconduct,

new trial motions, or evidentiary hearings, Petitioner is not

entitled to relief in this proceeding.   Federal habeas relief is

available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. at 67-68.  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law.

C.  Analysis

With respect to Petitioner's claim that he suffered a violation of his right to a fair trial by an impartial jury, under Supreme Court precedent, the remedy for an allegation of juror misconduct is a prompt hearing in which the trial court determines the circumstances of what transpired, the impact on the jurors, and whether or not the misconduct was prejudicial.  Remmer v. United States, 347 U.S. 227 (1954) (trial court should not decide ex parte an issue of potential jury tampering or outside influence arising

during trial, but rather should notify all parties and hold a hearing in which all interested parties participate to determine the circumstances, the impact upon the juror, and whether or not it was prejudicial); Smith v. Phillips, 455 U.S. 209, 216–17 (1982) (due process was satisfied by trial court's holding a post-trial hearing concerning a juror's having applied for a job with the prosecuting agency during the trial, noting that the trial court had the duty to watch for and determine any prejudice from such an event, and determination of the effect of such occurrences when they happen "may properly be made at a hearing" such as that held by the trial court in that case); Bell v. Uribe, 748 F.3d 857, 867 (9th Cir. 2014), cert. den. DeMola v. Johnson, 2015 WL 1280239 (Mar. 23, 2015) (citing Smith).

However, clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time there is an issue of jury misconduct that does not involve jury tampering. Tracy v. Palmeteer, 341 F.3d 1037, 1044 (9th Cir. 2003). The Ninth Circuit Court of Appeals has described the status of the law as follows:

> Remmer and Smith do not stand for the proposition that any time evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. Smith states that this "may" be the proper course, and that a hearing "is sufficient" to satisfy due process. 455 U.S. at 217, 218, 102 S.Ct. 940. Smith leaves open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate any due process concerns.

> Indeed, our own cases have interpreted Smith and Remmer as providing a flexible rule. As our colleague in dissent has acknowledged, "[a]n evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be

27

held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." Angulo, 4 F.3d at 847 (Lay, J.) (emphasis in original and citation omitted); see also United States v. Hanley, 190 F.3d 1017, 1031 (9th Cir.1999) (citing Angulo and holding that "[h]ere, the district court did what it was required to do. It considered the content and the seriousness of the alleged statements [made by one juror during the trial that allegedly showed bias] and properly determined that such vague statements did not expose Defendants to unfair prejudice. In the circumstances, the district court's refusal to hold an evidentiary hearing was not an abuse of discretion"); United States v. Langford, 802 F.2d 1176, 1180 (9th Cir.1986) ("While we recognize that where a trial court learns of a possible incident of jury misconduct, it is preferable to hold an evidentiary hearing... not every allegation [of misconduct] requires a full-dress hearing"); United States v. Halbert, 712 F.2d 388, 389 (9th Cir.1983) (affirming the district court's refusal to hold a hearing regarding extraneous information considered by a juror when the district court knew the exact scope and nature of the information). We have also held that Remmer's command that hearings are warranted in every case is unique to the tampering context, where the potential effect on the jury is severe. See United States v. Dutkel, 192 F.3d 893, 894-95 (9th Cir.1999). Tampering was not at issue in Tracey's case.

Tracy v. Palmeteer, 341 F.3d at 1044-45.

Here, there was no evidence of any tampering with the jury or other external influence on the jury, and there was no indication of any juror's inability or failure to consider the evidence, engage in deliberations, or apply the law.  Instead, the juror's report related merely to two other jurors' expressions of disagreement with the reporting juror and the latter's feeling of intimidation in expressing her opinion.  However, verdicts were returned on all counts, and the verdict on the third count reflected a significant reduction from a charged robbery to a petty theft.  Further, when asked if the verdict was unanimous, the jurors responded in the

28

affirmative.  Before the verdicts were returned, the reporting juror did not seek to report or obtain relief for any problem related to deliberations.  The reference to being entitled to a rereading of Brockett's testimony is vague; the jury failed to specify any particular part of the testimony to be reread or otherwise to follow up with respect Brockett's testimony, but other evidence was submitted to and reviewed by the jury, and deliberations continued.  On the record before the trial court, it appeared that further deliberations or consideration of other evidence resulted in a decision by all the jurors to forego any further rereading of testimony.

In light of the record before the state court, it was objectively reasonable to conclude that the juror's report did not reflect misconduct or require any further investigation.  There is no clearly established federal law requiring an investigation into juror misconduct in these circumstances.  The evidence against the Petitioner was also strong, and the verdicts were affirmed as the verdicts of each and all of the jurors.  The ruling of the trial court did not have any substantial or injurious effect on the verdict.

Accordingly, the Court will deny Petitioner's claim of absence of a fair trial before an impartial jury resulting from a failure to investigate jury misconduct or grant a new trial.

V.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28

29

U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  <u>Id.</u>  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court will decline to issue a certificate of appealability.

VI.   Disposition

In accordance with the foregoing analysis, it is ORDERED that:

1)   The petition for writ of habeas corpus is DENIED;

2)   The Clerk is DIRECTED to enter judgment for Respondent; and

3)   The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **May 6, 2015**                              **/s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE